Thank you, Kyle. Case number 14-3365, Frank Ragozzine v. Youngstown State University et. al., argument not to exceed 15 minutes per side. Mr. Alfand, you may proceed for the appellant. Mr. Alfand, before you begin, this is Judge Rogers. Can you hear me all right? Judge Rogers, I can hear you fine. Can you hear me all right? Now I can. It just got a little louder in the last second. I'm going to move the mic a little bit closer to me. Maybe that will make it easier. It's fine now. Thank you. Mr. McPhillips, are you able to hear us? Yes, Your Honor. You're coming through fine to me as well. Thanks. Mr. Alfand, please proceed. Thank you, Your Honor. May it please the court, this morning one issue that is what I consider to be troublesome is the disqualification issue here. We believe it is serious and it raises important concerns related to ensuring that there is not even the slightest appearance of partiality by a court. The facts here can show that, in fact, as Judge Rogers noted in the United States v. Angeles case, we're dealing with something at most a professional acquaintanceship existed, it wouldn't mandate disqualification. But I believe Judge Rogers went on to state that Angeles was not an intimate personal relationship in which a judge would be obligated to disclose. Here this was a personal romantic relationship. Here and after Dr. Ragusea heard about Judge Pearson being seen on campus at some events, he made inquiries and reported it to counsel. We promptly made inquiries and once we were able to verify the nature of the undisclosed relationship, we went to opposing counsel in the court and we raised it. And this was shortly after the court had issued its decision on summary judgment. I wish it had been before. But historically, these disclosures are made voluntarily by the judges and sometimes the parties are given an opportunity at that point to say whether they would agree to keep a judge or wish to be reassigned. In over four decades of practice, most of these issues arise voluntarily and sometimes the connection is noted by counsel and brought to the attention of the judge, at which point the judge either discloses to everyone or automatically recuses. Here this didn't happen. Instructive to this case is a decision that is the Ohio PERS decision versus federal home loan, which is a decision on a motion to vacate the prior orders of a recusing judge who had the case for five years before recusal. Judge Pearson wrote in that case that judicial integrity depends heavily on the appearance of impartiality. She wrote that the appearance of impropriety may require the retroactive recusal of a judge and any rulings that were made in the judge and even the judgment entered must be vacated. Simply stated, when confronted with such circumstances and without disclosure, Judge Pearson did not take a similar action. I believe that the confidence in the judiciary is at stake in this matter and I think of this as an important issue. She should have recused or at least given the opportunity of parties to indicate whether they wished her to be recused and as such, without disclosure, she should have to disclose when the judge has determined that there's not an appearance of propriety. If a judge has a close personal, in fact a close romantic personal relationship, I think the judge has an obligation to disclose. I've had judges disclose things like fishing trips. I'm asking a particular question. Let's say the judge thinks about it, maybe does some I'm sorry, that recusal is not required, but it's close. Are you saying there's a standard that if it's close, but the judge has determined that recusal is not required, that the judge has to bring it to the parties to let them to ask for argument? I mean, I'm certainly the judge could and maybe many judges do, but are you saying the judge is required to do that when the judge has made a determination that it's not required? It's my understanding that no determination was made by the judge that this was not required until after it was raised. The question... Can you answer my question though? I'm concerned about the ramifications of a holding in your favor. Let's assume that a judge thinks, oh, I have this relationship. Let me think about it. Oh, it would not require recusal and then does nothing. Is there a case which says that's wrong? Assuming that, is there a case that says, oh, it's a procedural matter that has to be in, that a judge has to give that knowledge to the, to the parties? I don't know of a case that directly states that, your honor, but I... And wouldn't it be very difficult to have such a standard? Because then, then there's a, there's a disclosure requirement when there isn't a recusal requirement. That would be strange, wouldn't it? No, in fact, in cases that I've been in, your honor, I have had disclosures when there was not an automatic grounds for recusal. And in fact... I'm talking about being required to do it. A judge can do whatever they want. They can say, I went to the Rocky Mountains and I want to know whether you think I should just recuse because I have someone named Rocky appearing before me. A judge can do that if he wants to, can't he? I, let's put it this way, that has not been my experience, but yes, I presume that a judge could disclose any reason that they believed was significant that might affect their, their, at least the appearance of partiality. And I think in this instance, having a romantic relationship with a tenured professor at the defendant in the same college that my client worked in, I think should have at least closed, we would have had the opportunity to choose. Okay, I understand. In these circumstances, I think that's where we're at. Okay, thank you. Okay, one thing, tenure decisions in this case have been, I think, put in a standard that is really not the standard under the law. Tenure decisions here at Youngstown State University are done in a more objective manner than they were done historically at many universities. There are factual conflicts clearly on the record, and those are illustrated by what happened with the Tenure Denial Review Committee. Unlike every tenure case cited by YSU's counsel, here a unanimous review committee found that Dr. Raguseen had been wrongfully denied tenure under the YSU's own standards, and they had stated that he was judged on different standards than other candidates. I think that is sufficient to show a dispute of fact with what the university did, and therefore should have been looked at as something that summary judgment would have been inappropriate for. With respect to the recommendation of tenure, there's no requirement here that the judge had to engage in any divination of arcane scholarship. This is a matter, scholarship levels are judged on appearance of publications in refereed journals, and those journals are reviewed by the experts in the field. And we have a true comparator here that went through at the same time, did not have any issues, was treated differently even though her publications were subject to some criticisms, and her publications in general were in journals that were not rated as highly as the ones that Dr. Raguseen was published in. There's that objective information that creates the disputes of fact. And finally, the FMLA interference retaliation issue I think is extremely important. Defendant Giorgetti, the individual defendant, was direct supervisor of Dr. Raguseen, and she knew long before any extension of the time to submit the tenure documents were made that he was being engaged as the primary caretaker of others, his wife and his mother. Mr. Elphin, if I might intervene here, Judge Norris, just exactly what do you contend was the FMLA leave that he took? Well, he took significant leave in the 2010-2011 school year leading up to his request for What leave did he take? Did he take it from teaching classes? What leave did he take? Well, the leave he took was leave that was necessary to complete his research and writing projects to get his refereed publications out. He managed to juggle appointment and so that he did not miss teaching classes. So the FMLA leave was the one-year tenured review postponement, am I correct? That was the accommodation for the leave he had to take, yes, Your Honor. And it was not labeled by Youngstown State University. When he brought it to their attention both to Giorgetti and to the provost where he offered to document everything, they never mentioned once, we'll treat this as FMLA, but they allowed, they basically... So he gets a one-year extension and that's an FMLA leave? No, the FMLA leave was exercised by him without putting a label on it during the prior year. The extension was to accommodate for the leave he had taken. And once you then hold the extension against him for interfering with his exercise of FMLA rights. I hope I made that clear. You did. Okay. Well, this is Judge Rogers, I'm not so clear. During that year, let's say he's a professor, right? Let's say instead of working all afternoon some day, he took his life to the hospital. Are you saying that was leave? In terms of, it could have been considered intermittent leave, especially if he's taking her to emergency hospital things where he had... Was it ever treated by the university as leave or indicated by your client that this is leave I'm taking? As opposed to what people in a flexible time situation like a professor's life happens all the time. You do something, you may be working all night and then you deal with something the next morning. I mean, I don't know how many people would call that leave. I mean, it just doesn't sound like the word leave is normally used. Well, and your honor, that is one of the problems here because the employer, YSU, failed to treat his request as requiring leave. Wait a minute, his request came after it happened, I thought. No, the request to Giorgetti happened during the year leading up to the request that was made to the provost in August of 2011. It wasn't a request, pardon me, this is Judge Rogers, it wasn't a request to take time to treat his wife, it was a request to get additional time to be considered for tenure by its terms, wasn't it? Well, that was the substance of the request, but the basis of the request was made clearly based upon his obligations to provide care for others. Your honors, I know my initial time is up, I do not want to use this, and I will... We'll hear from your opponent and you still have your four minutes for rebuttal. I appreciate it, thank you, your honor. Mr. McPhillips? Mr. McPhillips, are you there? Yes, I'm sorry, your honor, this is Michael McPhillips. Please proceed. Thank you. Your honors, first of all, thank you for accommodating our request to postpone today's hearing and hold it by telephone this morning. Reasonable minds often differ on whether a college or university faculty member is or is not entitled to tenure, but as the district judge properly stated in her opinion, and this court has repeatedly found, without more, disagreement of reasonable minds in the tenure setting doesn't entitle someone to a federal jury trial. The appellant is also correct in his brief that in federal employment, discrimination and retaliation cases, the use of subjective criteria does often require courts to scrutinize more closely the motive behind a job action. But again, without more, the use of subjective standards, which are almost always present in a tenure decision, does not entitle someone to a federal jury trial when they're denied tenure. For all of Dr. Ragusean's claims, sex discrimination, FMLA retaliation, due process violations, he failed to demonstrate a genuine dispute of material fact on one or more elements of his claims and defendants are entitled to judgment as a matter of law, as the district judge found. I'll be happy to address any questions the court may have. I'll address, first of all, Mr. Elson's discussion on the judge recusing and disqualifying herself. The district judge in docket number 68 issued a very well-reasoned opinion indicating she did her homework. She acknowledged disqualification was, quote, a serious decision that deserves somber contemplation. She consulted with the Code of Judicial Conduct for U.S. judges, consulted an ethics professional employed by the Administrative Office for United States Courts. She reviewed advisory opinions, one of which said that when a judge's spouse is employed at a university, that doesn't require the judge's recusal from all matters involving the university. We don't have a marriage situation here. We have, although Mr. Elson characterizes it as a romantic relationship, there was no evidence anymore that they were seen as social functions more than one time. So I don't know if romantic is the proper description of it. The district court described the timing of the request as specious and the facts do bear that out. By Dr. Raguseen's own admission, he'd heard rumors about the dating relationship between the district judge and a YSU professor before the summary judgment decision. But at oral argument, when Dr. Raguseen was in attendance in the district court's courtroom, he heard the judge ask myself some pointed questions about the basis of the defendant's defense position. And Dr. Raguseen said nothing until the district judge granted summary judgment. Dr. Raguseen describes on page 23 of his brief that he only conclusively learned about the dating relationship after summary judgment was granted. Yet, if disqualification is as important as Dr. Raguseen puts forth in his brief, the rumors that he had heard would have prompted action at that time and the timing of this request was specious. All of the district judge's rulings in this matter showed no bias in favor of YSU and against Dr. Raguseen. She allowed the plaintiff to go forward with her Title VII claims before he obtained a right to sue letter. Discovery was expedited. The case wasn't filed until April 2013. Trial was set for March of 2014. So that is a fast track in federal court for a trial date to be set 11 months after the case is filed. Mr. Offen's request for oral argument on summary judgment was granted in district court as well. So there was no appearance whatsoever of any bias by the district judge. When the issue was raised in district court, the defendants didn't oppose it with any knowledge because they had no knowledge of any relationship between the district judge and the YSU professor. And the defendants left it to the district judge to make her own judgment about whether there was any merit to this request. The judge has stated in a very well-reasoned opinion, found there was no conflict, there was no requirement for her to disqualify and vacate orders and defendants would ask, the counsel, this is Judge Rogers. Could you proceed to the Title VII issue? Did you hear me? I'm sorry, yes. Could you repeat that again? Would you address the Title VII issue and in particular the qualifications of the comparator? Yes, Your Honor. The sex discrimination for Title VII, athletes would submit that there is the element of the unusual employer requirement that the Sixth Circuit Zambetti case and many other district and Sixth Circuit cases have followed that when the plaintiff in either a race case or a sex discrimination case, as we have here, is in the majority, there's the additional element that background circumstances must be put before the court that the employer is the unusual employer that discriminates against men. Counsel, this is Judge Rogers. Can you hear me? Yes. I wonder if you could just put aside that special requirement for reverse discrimination and address whether even without that we should affirm on the sex discrimination issue. Yes, Your Honor. Our position is that you should. If I may address the element of a similarly situated comparator, this is in our brief on pages 45 to 47. There was unrefuted evidence that the female comparator, Julie Boron's, credentials were far superior to Dr. Ragazzine's. Docket number 53-1 is the affidavit of the common department chair for Dr. Boron and Dr. Ragazzine. At page ID 1796, Dr. Giorgetti sets forth several categories that are reviewed in tenure decisions in which Dr. Ragazzine's credentials paled in comparison to Dr. Boron. Since her first year at YSU, she started organizing symposia in her specialty of gerontology. She was an organizer and what they referred to as a discussant at symposia on gerontology in her first probationary year, her second probationary year, and her third probationary year. Dr. Ragazzine did nothing similar. Dr. Boron brought grant money into the university, although Dr. Ragazzine, who had previously worked at Missouri State University, had obtained grants when he was there. He did not obtain any grant money during the time that he was at Youngstown State University. Within that affidavit are also set forth various other categories, including presentations and discussions, several dozen that Dr. Boron gave. Dr. Ragazzine did give some presentations, but Dr. Boron dwarfed Dr. Ragazzine's as far as that is concerned. And since Title VII in this case involves sex discrimination, just by saying, I was treated unfairly, that according to the Doucette v. University of Cincinnati case is not enough. There is also the Kent State case that we cite in which the court says you do need to I have no further questions. Do my co-counsel or my co-judges have further questions? None from me. On the family leave act, is your response to that simply that he never invoked his rights under the act? Yes, Your Honor. Just to add to some facts to the questions that were directed at Mr. Elf, Dr. Ragazzine had more than 580 hours of paid leave available to him at Youngstown State at the time he asked for the one-year extension. He never used a single hour of his paid leave until early 2013 after the tenure decision was final. So this was not a request for leave type of situation. And as Mr. Elf states in his brief, he is correct, it's not necessary to use the magic words FMLA, you don't have to use the words serious health condition, but someone who wants leave under the FMLA does have to ask for time off or take time off and Dr. Ragazzine didn't either. Does the act only protect the actual leave or does it protect you from being penalized for having to care for relatives? Our position would be that the act would only protect leave that's either used or requested. As you know, the FMLA has been expanded in the past several years to include military type situations, qualifying agencies of employees with family members in the military. If a worker in an office proudly brags about his or her childhood in the services and never asks for any kind of leave, under the appellant's theory of the FMLA, a year later if something adverse happens to them, they could say, well I have an FMLA type condition, I have a child with military service. So there is that request for leave that really triggers the obligations of an employer. Well, if somebody says I have a sick mother and a sick wife at home and I'm going to be able to accommodate my teaching obligations because of the flexibility, but I am not going to be able to do the scholarship that is required for tenure, I request an accommodation that you take that into consideration and don't judge me by the same standards because of that. Is that covered by the act? That scenario could conceivably be covered by the Americans with Disabilities Act or the Rehabilitation Act for recipients of federal financial assistance, however, I'm unaware of any duty to reasonably accommodate under the FMLA. The law is clear, it requires up to 12 weeks of paid or unpaid leave for various types of situations including serious health conditions of family members. It also does require when someone takes leave, case law has set forth that the standards, for example, quotas of work productivity would need to be adjusted for someone who is taking leave to accommodate the time that they were off. But as far as just changing work requirements in a tenure setting, the collective bargaining agreement was quite clear that for people in certain situations who needed an extra year due to childbirth, for example, as well as for serious health conditions of themselves or a family member, they could get that extra year. Neither the collective bargaining agreement nor any case law I'm aware of under the FMLA requires a duty to accommodate by adjusting work requirements. So, as I understand it, the plaintiff used that year and did produce the scholarship that was required. Is that correct? He met the minimum requirements to be considered for tenure. Yes. And in terms of the tenure decision, as I understand it, there was a feeling that he had waited to the last minute and therefore he wasn't likely to produce a lot as a qualified professor? Yes, Your Honor. The standard is, quote, consistent evidence of quality, performance, and promise, unquote. During his first, second, third, and fourth probationary years at Youngstown State, Dr. Raguseen did not produce a single peer-reviewed article. And this, again, was a professor who'd been working for six years previously at a different university. There were questions raised about the quality of one of the journals in which he published that had no known peer reviewers who were psychologists, which was the discipline in question. There also was the timing. One month before his tenure application was filed was when Dr. Raguseen's most substantive article was accepted for publication. It wasn't actually published until around the time that the tenure denial became final. So timing was important in this situation. And there's a history of denying tenure to people that don't publish until their last year? Your Honor, that did not come up during discovery and I don't know of anything in the record that addresses the history. Since this is a sex discrimination, FMLA retaliation case, discovery did focus on how the university treated female applicants vis-a-vis male applicants, the FMLA issues, and so forth. The general history of late publishers did not come up. Thank you. I see that your time is up. Thank you for your argument and we'll now hear rebuttal. Thank you. Thank you, Your Honor. I'd like to just briefly that the treatment of Julie Boron in the record was all the things as to the indices that apply to which publications your refereed articles come out in. And under the indices, Julie Boron's publications were in less prestigious journals or less read and cited journals than those of Dr. Raguseen. So I don't think there's any big difference in scholarship that was in the record. I think that's a fact that needs to be decided. I also think that he exceeded the requirements on publication. I'm not certain. I did not see anything that the foreign journal that published one of Dr. Raguseen's articles was a foreign journal. There was no question about it being properly refereed or that the refereers who reviewed his articles were not indeed qualified in the field of psychology. What was the name of that journal? Off the top of my head, I can pinpoint to it. It's a journal that's published in India on the musicality. It's called NINAD. N-I-N-A-D? It's a music journal, right? A music theory journal? But the refereeing was done because this was a psychologist submitting. It was done by people who were properly credentialed to review a psychologist. Remember, Dr. Raguseen's specialty was in the psychology of music as an experimental psychologist. I see. It was reviewed by appropriate people. That's all I'm saying. I believe that Judge White's question is basically on point. We cited the Pagel decision out of the Seventh Circuit, Pagel versus Tinning in our brief and Wojan versus Alcon Labs where somebody used FMLA time and then when it came to reviewing their performance later when they were no longer using FMLA, they rated the period of time based upon FMLA usage against them and that was considered to be interference or retaliation much as we have alleged here. What about the first three or four years? Well, in the first three or four years, the record demonstrates that when Dr. Raguseen accepted his position at One Youngstown State, he was to be given a lab and funding to build a lab to do his experiments and that funding didn't even occur until the second year he was there. And it took the rest of that second year to even set it up and start getting ready to collect data. So there are circumstances that went in the first three or four years that because you published based upon collected data that is different than, I'm going to say, a clinical study of a patient in a psychological setting, his research and articles took more time. And it's also the issue of the Title VII comparator. Remember, Julie Bourne and Frank Raguseen could both be selected and there was no requirement that this be a person being selected. So we could look at them directly comparing how they were treated in the process. And in terms of the states made a big deal out of unusual employers, I believe that this court's decision in Howe v. City of Akron and the Supreme Court's decision in Ritchie v. DeStefano kind of put to rest the notion that somehow you have to be an unusual employer to not engage in discrimination. And the one thing ignored in YSU's argument, the Tenure to Dial Review Committee, a unanimous decision in favor of tenure against what was done and then the acceptance of his supervisor George Eddy's recommendation, I believe leaves great issues of fact that need to be determined for the vote in terms of getting a jury to decide the disputes of factor. We thank you, Your Honor. Thank you, Counsel. Thank you, Counsel. We appreciate your arguments and the case will be submitted and I believe you both, Counsel, can hang up now.